THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : 3:17-CR-77 |
| | : (JUDGE MARIANI) |
| ANDREW JOSEPH DANKO, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Andrew Joseph Danko's Motion for Early Termination of Supervised Release (Doc. 338), filed approximately 26 months into his 48-month term of supervised release. The parties have fully briefed the motion (Docs. 339, 341) and the motion is ripe for disposition. For the reasons that follow, Defendant's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson,* 645 F.3d 191, 197 (3d Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. §

3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

2

punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

In the present case, Defendant Danko pleaded guilty to Count 1 of the Indictment against him, which charged that from in or about February 2016 to on or about January 1, 2017, he and his four co-defendants conspired to distribute 100 grams and more of heroin in violation of 21 U.S.C. § 846. Danko's plea agreement included an agreement by the parties that, with respect to the application of the U.S. Sentencing Guidelines to Defendant's conduct, the parties would recommend to the Court that Danko was involved in the distribution of at least 700 grams but less than 1 kilogram of heroin. (Doc. 91, ¶ 13).

Pursuant to the Pre-Sentence Report ("PSR"), to which Defendant did not object, the offense conduct which formed the basis for Danko's conviction included his involvement in a number of large drug transactions, with at least four other individuals, as detailed below:

> [DEA] Agents intercepted telephone calls between [co-defendants] Gimy Jose Rodriguez, Andrew Joseph Danko, Angela Haggerty, Jerrod Curtis, Hector Delacruz, and others who had been distributing quantities of heroin. Intercepted telephone conversations indicated that Andrew Joseph Danko and Angela Haggerty were two of Gimy Jose Rodriguez's main heroin distributors and dealt with him directly.
>
> On November 19, 2016, Gimy Jose Rodriguez contacted Angela Haggerty and informed her that he would provide Andrew Joseph Danko with 20 bricks of heroin for $230 and that they were not to "front" any of their customers heroin. The customers would be required to pay cash for the drugs upon receipt of the drug.
>
> On November 24, 2016, Andrew Joseph Danko called Gimy Jose Rodriguez to purchase two bricks of heroin for $180.
>
> Gimy Jose Rodriguez contacted Andrew Joseph Danko on November 25, 2016, and Andrew Joseph Danko requested to purchase one brick of heroin. A specific amount of money was not discussed.
>
> On November 25, 2016, Gimy Rodrigues received telephone calls from Andrew Joseph Danko and Angela Haggerty, and they discussed the purchase of between five and nine bricks of heroin for $400.
>
> On November 27, 2016, Gimy Jose Rodriguez contacted an unindicted co-conspirator and discussed the availability of heroin at his/her residence. During the conversation, Angela Haggerty was put on the telephone by the unindicted co-conspirator. Angela Haggerty and Gimy Jose Rodriguez discussed her and Andrew Joseph Danko purchasing twelve bricks of heroin from Gimy Jose Rodriguez for $1,040.

(Doc. 127, ¶¶ 6-11).

The PSR further detailed Defendant's lengthy history of drug and alcohol abuse, documenting that:

> Danko first experimented with alcohol at 12. His alcohol consumption escalated to occasional at 14. From 15 to 20, the subject consumed alcohol weekly before reportedly stopping. The defendant began smoking marijuana weekly at 12. By 14, he was smoking marijuana daily and quit at 19. At 13, the defendant began using Ecstasy weekly. From 17 to 18, the defendant ingested the drug daily before reportedly quitting. The defendant started using cocaine base (crack) monthly at 13. His usage increased to weekly at 15. From age 16 until his incarceration in March 2017, the subject used approximately two grams of the drug daily. He experimented with acid at 14. At 21, Andrew Danko began using heroin weekly. His usage increased to "five grams a day" at 22 and continued until his imprisonment. From 26 until his imprisonment in March 2017, the defendant used approximately one gram of methamphetamine daily.

(*Id.* at ¶ 51). Danko also reportedly participated in inpatient drug and alcohol treatment at the age of 17 and then participated in another inpatient drug and alcohol program from July 23, 2012, to August 20, 2012, where he was diagnosed as "opiate dependent." (*Id.* at ¶¶ 52, 53).

On July 20, 2020, this Court sentenced Danko to a term of incarceration of 68 months, to be followed by a term of supervised release of 48 months. (Doc. 309). Danko was released from prison and began his four-year term of supervised release on January 25, 2022. Having now served approximately half of his supervised release term, he moves for early termination of this supervision. Upon consideration of the statutory factors, it is evident that early termination is not "warranted by the conduct of [Danko] . . . and the interest of justice", 18 U.S.C. § 3583(e)(1). Defendant's motion will be denied.

Danko asserts that he "is rehabilitated, re-integrated into society and poses no risk of recidivism." (Doc. 339, at 4). Defendant states that he is engaged to his partner, has custody of his 13-year-old daughter and is also helping to raise his fiancée's special needs daughter. (Id. at 2). Defendant further states that he works with his fiancée who has "a business giving seminars and small group tours focusing on natural medicine, foraging, mushroom hunting and various aspects of natural medicine" but that, due to his conditions of supervised release, he is unable to travel with her on her work trips "throughout the United States and other countries." (Id. at 3). Finally, Defendant claims that he is facing a "rare conflict between two mandatory conditions contained in his Judgment", specifically, the condition that he participate in a drug treatment program, wherein a counselor has recommended that he be prescribed medical marijuana, and the condition of supervised release that he refrain from using controlled substances. (Doc. 339, at 3-4).

Preliminarily, there is no evidence that "new or unforeseen circumstances" have arisen warranting the early termination of Defendant's supervised release.[1] Rather, Defendant Danko has done what is required of him while on supervised release. Mere compliance with the terms of his supervised release does not entitle Defendant to early

---

[1] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

6

termination of his four-year term of supervised release. *See e.g., United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

Moreover, the nature and circumstances of the drug conspiracy in which Danko participated, including the large quantity of heroin which he admittedly distributed, combined with his lengthy history of drug and alcohol abuse since the age of 12 years-old, weigh heavily in favor of not terminating Defendant's supervision early. Continued supervised release also provides possible deterrence to further criminal conduct, *i.e.* possession, distribution, or participation in another conspiracy to possess and/or distribute, one or more controlled substances, and in so doing, serves to aid in the protection of members of the public. Danko's compliance with the terms of his supervised release and his "recover[y] from his past addictions to hard drugs" (Doc. 339, at 4) may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior and to promote his recovery and rehabilitation. *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation

of it to full term will achieve its desired effects on the supervised individual and community."). Significantly, given Danko's lengthy history of addiction, remaining on supervised release ensures that Defendant may continue to be monitored and provided, if necessary, any further needed drug and alcohol therapy.

Finally, Defendant's assertions that his supervised release prevents him from traveling both nationally and internationally and that he is unable to comply with the recommendation of his substance abuse counselor that he be prescribed medical marijuana, fail to demonstrate that his supervised release should be terminated early. As noted by the Government (see Doc. 341, at 10), Danko has not claimed that he has requested permission to travel or that any such request has been denied. Nor has Danko shown how his asserted inability to travel, while inconvenient, causes him any undue hardship. Defendant's desire to obtain a prescription for medical marijuana as a basis for early termination of supervised release is equally unpersuasive. It is of note that in support of Danko's claim that his counselor "recommended that he get a medical marijuana card", the letter from the counselor, who is not a doctor, states that "[d]uring [Danko's] treatment it had been suggested that Andrew seek an appointment with a mental health provider, Medication Assisted Therapy, as well as a physician who can prescribe medical marijuana. . ." (Doc. 339-1). Thus, the letter merely conveys that a suggestion was made, by one or more unknown persons at the treatment facility, that Danko seek mental health treatment as well as an appointment with a doctor who has the ability to prescribe medical marijuana.

There is nothing preventing Danko from following the first recommendation, *i.e.* obtaining further mental health care, and the letter does not specifically say that Danko should be prescribed medical marijuana, only that it has been recommended that he discuss this option with a medical professional. Further, while this Court will not substitute its judgment for that of a medical professional, it is difficult, if not impossible, to understand how an individual who began smoking marijuana at the age of 12, and who abused illicit controlled substances up to, at the earliest, the time of his arrest in 2017, would be best served by resuming his pattern of ingesting marijuana on a regular basis.

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh heavily in favor of requiring Defendant to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.[2]

---

[2] Although the Government also urges the Court to deny Defendant's motion on the basis that his appellate waiver bars a motion for early termination of supervised release (*see* Doc. 341, at 4-8), the Court declines to address this argument where Defendant's motion will be denied on the alternate bases set forth herein. The Court's decision not to found its denial of Danko's request for early termination of supervised release on the basis of the appellate waiver in his plea agreement should not be understood as an indication that the Court does not view this as a valid basis to deny the defendant's motion.

## III. CONCLUSION

For the foregoing reasons, Defendant Danko's Motion for Early Termination of Supervised Release (Doc. 338) will be denied. A separate order follows.

_____
Robert D. Mariani
United States District Judge